## THE W. H. MEYER.
### No. 4815.

Circuit Court of Appeals, Seventh Circuit.
Dec. 29, 1932.

Laurence E. Coffey, of Buffalo, N. Y., and Howard A. Hartman, of Milwaukee, Wis., for appellant.

Harney B. Stover, of Milwaukee, Wis., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

Libelant seeks recovery of damages to its steamer S. M. Clement, alleged to have occurred November 23, 1929, about 9 o'clock p. m. while the steamer was proceeding up the Milwaukee river in tow of respondents' tug W. H. Meyer. The libel charges that respondents, towers for hire at the port of Milwaukee, undertook to tow the steamer up the river, and ought, in the exercise of reasonable care, to have known that in parts of the river intended and necessary to be traversed the water was of insufficient depth for a vessel at the steamer's draft; that, because of such insufficient depth of water, the steamer struck and rubbed the bottom of the channel; that the tug continued to tow the steamer when it was, or should have been, known to those in charge of the tug that the water was of insufficient depth for navigation of the steamer at her draft; and that, in consequence, libelant sustained damage of $44,853.30.

After hearing the evidence, the court found, inter alia, that in the location described in the libel the steamer did not rub her bottom hard, and that the steamer sustained no damage in the Milwaukee river November 23, 1929, and that the damage to the bottom of the steamer, first discovered March 1, 1930, was not incurred at the place described in the libel. Decree was entered dismissing the libel.

The Clement was 500 feet long and 52-foot beam, was carrying a cargo of coal, and drawing 19 feet bow and stern. It moved up the river under its own power at the rate of about a mile an hour, preceded by the tug, attached by a line which was kept just sufficiently taut to take up the slack. The pilot of the Clement kept it in the proper channel, making whatever turns were necessary.

There was evidence that at certain points there was some rubbing of the steamer's bottom, but there was also evidence that such manifestation of rubbing as was testified to was an experience frequently encountered by boats navigating the river, and from which generally no damage to the vessel ensued or was to be anticipated.

Members of the crew of the Clement testified that they felt a sort of tremor of the steamer at places in the river where it is contended the bottom of the steamer rubbed, but that the ship kept its course without stopping or materially slowing up.

That the alleged occurrence of rubbing was not at the time regarded as serious or unusual is apparent from the fact that no intimation of it was given to the tug, which was throughout the trip within short hailing distance, and from the fact that the trip continued without any interruption or delay until the unloading dock was reached.

In about two and one-half days the unloading was completed and the steamer took on its usual water ballast, and was towed down the river for bunker coal, leaving the port of Milwaukee at 11:30 a. m. November 26 for Manitowoc. There it was loaded with grain for winter storage. With its grain cargo it then proceeded to Buffalo, and, before arriving there, some leakage was noticed. It remained at Buffalo during the winter; but it does not appear that the leakage was serious or that it interfered with the continued storage of the grain. Having discharged her grain cargo, she returned early in March to Manitowoc, where she went into dry dock. It was then discovered that sixty-seven of her frames were set up about an inch, and nearly as many of her plates corrugated and bent and set up about one and one-half inches, requiring extensive repairs which cost upwards of $40,000.

There was evidence that such an injury to the steamer's bottom could not possibly have occurred by rubbing on hard bottom in the river without stopping such a vessel moving at such slow speed, or without causing it to list and rise perceptibly in the water. There was other evidence to the contrary. There was contradictory evidence as to the depth of the water in the channel, some witnesses maintaining it was not sufficiently deep for a vessel of this draft, others testifying that it was. But there was no evidence that either the steamer or the tug departed from the channel, or that there was any negligence or impropriety in the navigation of the tug.

The witnesses were quite numerous, all but one testifying in open court. This situation persuasively suggests the impropriety of our disturbing conclusions of fact reached by the trial judge, who had the advantage of hearing and seeing the witnesses.

It seems quite incredible that an accident occurring on November 23, which was sufficiently severe to have caused the damage to the steamer which was subsequently discovered, would have been so little noticed at the time that not even those in charge of the tug were made aware of it, and no mention was made of it to any one before the steamer dry-docked in March, save that in the steamer's log it is stated that on the journey up the river the bottom rubbed. But beyond this is the fact that, when in March the serious damage to the ship's bottom was revealed, for nearly a year thereafter no charge, intimation, or claim was made that this costly injury was one which was caused by the occurrence on November 23, 1929, or was one for which respondents were deemed liable. Even the entry on the steamer's log of the rubbing of her bottom did not, for nearly a year after the extent of the damage was ascertained, seem to suggest to libelant any causal relation between that rubbing and the discovered damage. Respondents' first notice of any such damage or claim came through a letter to them from libelant's proctors, sent sixteen months after the "rubbing" incident and nearly a year after the damage was discovered. In the time intervening these towers continued frequently to tow libelant's vessels in the port of Milwaukee—in November, 1930, towing the laden Clement up the river to the same dock, under quite similar circumstances, without untoward happening.

It is not to be wondered that the court entertained the same doubt, which manifestly so long possessed libelant, of any causal relation between the happening of November 23, 1929, and the long subsequently discovered injury to the steamer's bottom.

Under the circumstances, disturbance of the decree would not be justified, and it is accordingly affirmed.